## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Communities United Against Police Brutality (CUAPB), Michelle Gross, Karen Lincoln, Samuel Wagner, David Bicking, Jamie Belden, Liz Dahl, Janelle Colway, Janet Nye, and Lucille Watt,** | **Court File No.** |
| **Plaintiffs,** | **COMPLAINT**<br>**WITH JURY DEMAND** |
| **vs.** | |
| **City of Crystal; and Mayor ReNae Bowman, Mayor Jim Adams, Councilmember Julie Deshler, Councilmember John Budzieszewski, Councilmember David Anderson, Councilmember Janet Moore, Councilmember Mark Hoffman, Councilmember Joseph Selton, Councilmember Laura Libby, Councilmember Casey Peak, City Manager Anne Norris, Police Chief John Bannick, Police Chief Stephanie Revering, Officer Justin Tourville, Officer Peter Underthun, Officer Douglas Leslin, Officer Mike Meehan, and Officers John Does 1-2, whose identities are presently unknown to Plaintiffs, all in their individual and official capacities,** | |
| **Defendants.** | |

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, and the First Amendment to the United States Constitution against City of Crystal and its above-named officials and/or employees.

2. It is alleged that Defendants violated Plaintiffs' First Amendment rights by prohibiting freedom of speech and expression, by retaliating against Plaintiffs for engaging in free

speech, and by discriminating against Plaintiffs on the basis of their protected speech and expression.

## JURISDICTION

3.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.  This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiffs' cause of action occurred within the State of Minnesota.

## PARTIES

5.  Plaintiff Communities United Against Police Brutality (CUAPB) is a non-profit community organization that has operated in Minnesota at all times relevant to this action, with members who seek to increase the oversight and accountability of police agencies with respect to police misconduct.

6.  Plaintiffs Michelle Gross, Karen Lincoln, Samuel Wagner, David Bicking, Jamie Belden, Liz Dahl, Janelle Colway, and Janet Nye were at all material times residents of the State of Minnesota and of full age. Plaintiff Lucille Watt was at all material times a resident of the State of Illinois and of full age.

7.  Defendant City of Crystal, Minnesota, is a municipal corporation and the public employer of the individual Defendants. Defendant City of Crystal is sued directly and also on the theories

2

of respondeat superior or vicarious liability for the actions of its officers/officials/employees, including the individual Defendants.

8.  Defendants Bowman and Adams were at all times relevant to this complaint duly elected/appointed and acting Mayors of the City of Crystal, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Crystal. Defendant Bowman was Mayor through December 31, 2012, and Defendant Adams was Mayor starting from January 1, 2013.

9.  Defendants Deshler, Budzieszewski, Anderson, Moore, Hoffman, Selton, Libby, and Peak, were at all times relevant to this complaint duly elected/appointed and acting Councilmembers of the City of Crystal, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Crystal. Defendants Deshler, Budzieszewski, Anderson, Moore, Hoffman, and Selton were Councilmembers in 2012; Defendants Deshler, Budzieszewski, Hoffman, Selton, Libby, and Peak were Councilmembers in 2013 and 2014.

10. Defendant Anne Norris was at all times relevant to this complaint duly appointed and acting City Manager of the City of Crystal, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Crystal.

11. Defendants Bannick and Revering were at all times relevant to this complaint duly appointed and acting Chiefs of Police of the City of Crystal, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Crystal. Defendant Bannick was Chief until October 2, 2012, and Defendant Revering was Chief starting on October 2, 2012.

12. Defendant Police Officers Tourville, Underthun, Leslin, Meehan, and John Does 1-2 were at all times relevant to this complaint duly appointed and acting officers of the police department of the City of Crystal, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Crystal.

## FACTS

### Introduction.

13. On July 29, 2008, the Ramirez family home, in the City of Crystal, MN, was burglarized essentially of all of the family's household possessions.  The burglary allegedly involved a police officer of another jurisdiction who was a member of the Metro Gang Strike Force.  This burglary was reported to the Crystal police, who performed no investigation beyond the initial offense report.  A community organization, Communities United Against Police Brutality (CUAPB), at the request of the Ramirez family, attempted to advocate for the family to have this burglary investigated by the Crystal police department.

14. Two Crystal police officers, Sergeant. Rob Erkenbrack and Officer Alan Watt, spoke up to city officials to express concern over the apparent corruption involved in not investigating the burglary.  They were subsequently fired from their positions.  At the request of Officers Erkenbrack and Watt, CUAPB also attempted to advocate for these two whistleblower police officers and garner community support.

15. Part of CUAPB's advocacy involved appearing before the Crystal city council to raise awareness of these issues and to ask for redress for the Ramirez family and Officers Erkenbrack and Watt.  The city council, city manager Anne Norris, and Crystal Police

Department leadership then entered into a pattern and practice of illegal behavior to oppose CUAPB's efforts.   These patterns and practices illegally prohibited First-Amendment protected speech by members of CUAPB and violated their constitutional rights.  In addition, in their actions to oppose CUAPB and prohibit its members' free speech, the city also violated the Minnesota Open Meeting law, Minn. Stat. § 13D.01, *et seq.*  multiple times, as documented by the Minnesota Department of Administration, Information Policy Analysis Division (IPAD), Opinion 14-015, attached hereto as Exhibit A.

**Restrictions on First Amendment Speech/Expression Enacted in 2012-2014.**

16. Prior to December 2012, the only rule that City of Crystal applied to the "open forum" section of the City Council meetings was that each citizen was limited to 3 minutes of comment time. (Attached hereto as Exhibit E is a summary of Crystal's "open forum" rules changes from December of 2012 through December of 2014.)

17. On December 18, 2012, Mayor Bowman and the City Council announced that new "open forum" rules had been adopted. Specifically, Mayor Bowman announced that the city adopted a new rule which would limit each subject to be presented for a total of 10 minutes, meaning that citizens wishing to speak on a topic that had generated more than 10 minutes of prior discussion during the same meeting could not speak on the same topic during "open forum."   In addition, the Mayor also announced a second new rule which prohibited citizen speech on  any matter "under pending or threatened litigation." During her recitation of the new rules, Mayor Bowman stated, "We added new language after eight years." This new rule restricted Plaintiffs' free speech and prevented Crystal community members from learning about potential liability resulting from the City's actions. These new rules were added after

CUAPB's advocacy and were clearly targeted at CUAPB and the plaintiffs to restrict their protected speech. (See Ex. E.)

18. On September 17, 2013, following the September 3, 2013 meeting during which Defendant Mayor Jim Adams prevented members of the public from speaking during "open forum" based on the topics they wished to speak about, the city announced new restrictions during "open forum" including prohibitions on comments related to "the Ramirez matter" or "Officers Erkenbrack and Watt" or "other current employees" as well as a directive that "Citizens are invited to communicate with city staff or the Mayor and Council by email or letter about this or any other topic."  These are private routes of communication.  One benefit of communicating concerns during the "open forum" period is that these concerns are shared with the greater community through live broadcast of city council meetings. The new rules for "open forum" also included a specific reference to Communities United Against Police Brutality, making it clear that the organization and its supporters were the target for these new restrictions. (See Ex. E.)

19. On December 2, 2014, after supporters of Communities United Against Police Brutality stopped attending city council meetings, the rules for the "open forum" portion of the meeting returned substantially to what they were prior to December 18, 2012 with the exception that the rule regarding limiting topics to a total of ten minutes was retained. (See Ex. E.)

**Events of October 2, 2012.**

20. On October 2, 2012, Plaintiffs Bicking, Nye, Gross, and Colway, participated in a peaceful and lawful demonstration outside of the Crystal City Hall and later the same day attended the scheduled Crystal City Council meeting. The purpose of the demonstration was to raise

awareness of what Plaintiffs perceived as an intentional cover-up and mishandling of the Ramirez matter by the City of Crystal administration, Crystal Police Department, and Chief Bannick.

21. Specifically, Plaintiffs sought to express their First-Amendment-protected views that a Brooklyn Park Police Officer committed crimes and constitutional violations against the Ramirez family in the City of Crystal, that the Crystal Police Department and Chief Bannick failed to properly investigate these crimes and constitutional violations because the perpetrator was a police officer, that City of Crystal administration, Crystal Police Department, and Chief Bannick intentionally failed to investigate and covered-up the criminal allegations related to the Ramirez matter, and that the mishandling and cover-up of the Ramirez matter was based on favoritism towards a Police Officer and discrimination against the Ramirez family on the basis of their Hispanic/Latino race/ethnicity.

22. Plaintiffs Bicking, Nye, Gross, and Colway participated in the demonstration outside of the Crystal City Hall. During this demonstration, Plaintiffs, along with others, displayed various signs with messages criticizing City of Crystal administration, City of Crystal Police Department and Chief Bannick, and accusing City of Crystal administration, Police Department, and Chief Bannick of favoritism, racism, and perpetrating an intentional cover-up to protect a police officer.

23. The City Council Meeting that was scheduled to be held that day had a variety of issues on the agenda, including the swearing-in of a new Chief of Police as well as other routine business.

24. During the demonstration, Crystal Police Officers secretly photographed the peaceful demonstrators from an upper floor window in the police administration building. This

included photographs of a Crystal city council candidate, Laura Libby, who participated in the demonstration.

25. As Plaintiffs engaged in their peaceful demonstration outside of the City Hall, a number of Crystal Police Officers positioned themselves in various locations around the City Hall. Five of these officers, including Defendant Officer Tourville, stood directly in front of the main entrance such that every person who sought to gain entry into the City Hall and the City Council meeting has to pass these officers to enter the building. Officer Tourville was equipped with a camera.

26. As individuals approached the main entrance to the City Hall, Officer Tourville openly photographed the Plaintiffs and every other individual who was also a participant in the demonstration. However, other individuals who were not participants in the demonstration and who attended the City Council meeting for other business were not photographed by Officer Tourville. Officer Tourville intentionally singled out and photographed the Plaintiffs and others who participated in the peaceful demonstration to retaliate against them for engaging in free speech and criticizing City of Crystal administration and Police Department and to discourage and suppress their First Amendment activities, and created a chilling effect, making them fearful to enter the meeting. Some individuals chose not to enter to avoid having their photograph taken and having their image on file with the police department. In addition, some individuals covered their faces to avoid being photographed.

27. Once the City Council meeting commenced, the new Chief of Police was sworn in and Defendant Mayor ReNae Bowman permitted the public attending the meeting to loudly applaud the new chief several times throughout the ceremony and at the conclusion of the

ceremony and to express their approval of the favorable comments that were made pertaining

to the new chief.

28. Later on, during the "Open Forum" portion of the meeting, Crystal Resident Laura Libby,

who participated in the peaceful demonstration, made a brief statement criticizing City of

Crystal administration and Police Department with regards to the Ramirez matter. At the

conclusion of Ms. Libby's statement, the public and the Plaintiffs applauded, at which point

Defendant Mayor Bowman interrupted the applause and prohibited further applauding for

Ms. Libby or others critical of City of Crystal administration and Police Department.

Through her actions, Mayor Bowman permitted applause and approval of comments

favorable to City of Crystal administration and Police Department and, at the same time,

interrupted and prohibited applause and approval of comments critical of City of Crystal

administration and Police Department.

**Events of July 31, 2013.**

29. On July 31, 2013, members of the Crystal City Council and City Manager Anne Norris

engaged in an email exchange in which they discussed whether to postpone the hearing on an

unrelated issue, opining that holding the hearing that night could possibly make a planned

rally by CUAPB "look bigger than it is and give the impression that they…has (sic) more

support than they have to the media present." This email exchange is attached hereto as

Exhibit B. In addition, City Manager Anne Norris stated in her email that the city council

would not discuss any of the issues raised by CUAPB due to pending litigation, though there

was no pending litigation at the time. The tone of her message shows clear bias against

CUAPB and the Plaintiffs. This email exchange constitutes an unlawful electronic meeting in

violation of the Minnesota Open Meeting law, see Exhibit A, and demonstrates the

9

Defendants' intent and motive to conspire against the Plaintiffs and violate their First Amendment rights.

**Events of August 5, 2013.**

30. On August 5, 2015, the Crystal City Council adjourned their regular council meeting, went to another location, and then held a closed work session.  This session was not properly noticed, there was no statement on the record prior to closing the meeting, and impermissible topics were discussed during the closed meeting. During this closed meeting, Defendants discussed and conspired on a strategy to prohibit and interfere with Plaintiffs' First Amendment rights. This meeting constitutes an unlawful closed meeting in violation of the Minnesota Open Meeting law, see Exhibit A, and demonstrates the Defendants' intent to conspire against the Plaintiffs and violate their First Amendment rights. The topics discussed during this unlawful meeting are explained in an email attached hereto as Exhibit C.

**Events of August 20, 2013.**

31. On August 20, 2013, the Crystal City Council held a closed session after their regular council meeting. This meeting was not properly noticed and was held without a statement on the record. In addition, the city council remained in the closed meeting area after reopening the meeting, which caused Plaintiffs and other members of the public to miss the open portion of the meeting because they had no way to know that the meeting had been reopened. This meeting constitutes an unlawful closed meeting in violation of the Minnesota Open Meeting law, see Exhibit A, and demonstrates the Defendants' intent to conspire against the Plaintiffs and violate their First Amendment rights. Upon information and belief, the topic discussed during this unlawful meeting was the situation involving Officers Erkenbrack and Watt. Had the meeting been properly noticed, Officers Erkenbrack and Watt would have had the right to

request that the meeting be open so that Plaintiffs, and other members of the public, could attend and participate, and the information discussed during the meeting would be available to the broader community. Officer Watt told Plaintiff Gross that had he received notice of the meeting as the Minnesota Open Meeting Law required, he would have requested that the meeting be conducted openly.

**Events of September 3, 2013.**

32. On September 3, 2013, Plaintiffs attended the Crystal City Council meeting for the purposes of participating in the "open forum" and discussing the situations of certain City employees. When Defendant Mayor Adams reviewed the open forum sheets and learned who had signed up to speak and their intended topics, he announced that the open forum portion of the meeting was being canceled, thus prohibiting the speech of the Plaintiffs based on the content of their speech. The open forum sign-up sheets are attached hereto as Exhibit D.  When Plaintiff Bicking attempted to speak to object to the cancellation, he was interrupted by Defendant Mayor Adams and told that the council did not want to listen to what he had to say and he was told to sit down, be quiet and then told to leave. When Plaintiff Bicking continued to speak in a civil tone, the City Council took a recess and held a closed meeting in violation of the Minnesota Open meeting law. While the meeting was in "recess," Defendants played extremely loud music in the room, forcing members of the public and the Plaintiffs to leave the room.

33. After a period of time, it became apparent that the council members had re-entered the council chamber. Plaintiffs Wagner, Belden, and Dahl then attempted to re-enter the chambers to attend the meeting and participate in "open forum" but were blocked by Defendant Crystal Police Officers Underthun and Leslin, who stated that Mayor Adams

directed them to keep members of the public perceived to be associated with CUAPB out of the meeting even if they had not attempted to speak previously. Notably, no one had been disruptive during "open forum" and only Plaintiff Bicking attempted to speak in a civil tone while all others sat silently in the room. Once Plaintiffs Wagner, Belden and Dahl were barred from re-entering, they relayed to the rest of the people associated with CUAPB that police told them that no one perceived to be with CUAPB would be allowed to re-enter the meeting and thus were prohibited from participating in the open forum. The Defendants' actions on September 3, 2013, constitute an unlawful closed meeting in violation of the Minnesota Open Meeting Law, see Exhibit A, and demonstrate the Defendants' intent to conspire against the Plaintiffs and violate their First Amendment rights.

**Events of September 17, 2013.**

34. On September 17, 2013, a list of prohibited topics for "open forum" was added to the city council meeting agenda. Mayor Jim Adams announced this list of topics at the beginning of the "open forum" that day. During the same meeting, Mayor Adams also announced another new rule for "open forum" which prohibited citizens from speaking about any current City of Crystal employee during "open forum" and referred specifically to CUAPB. City of Crystal and its elected officials enacted the rules above specifically for the purpose of silencing Plaintiffs and preventing Plaintiffs from exercising their First Amendment rights to criticize City of Crystal officials, making their criticisms known to the public, and seeking redress from the government. These city council meetings are broadcasted on cable television and are available for public viewing on the internet.

35. In addition, at the beginning of this meeting, Defendant Mayor Jim Adams announced that he was adding a closed session to the meeting.  This closed session did not meet the criteria for

an emergency meeting, the meeting was not properly noticed, the subjects of the closed meeting were not able to vindicate their rights, and the topics were improper for a closed meeting. This meeting constitutes an unlawful closed meeting in violation of the Minnesota Open Meeting law, see Exhibit A, and demonstrates the Defendants' intent to conspire against the Plaintiffs and violate their First Amendment rights. Upon information and belief, the topic discussed was the situation with Officers Erkenbrack and Watt.  If the meeting had been properly noticed, Officers Erkenbrack and Watt would have had the right to request that the meeting be open so that members of the public, including the Plaintiffs, could attend and participate, and the information discussed during the meeting would be available to the broader community. Officer Watt told Plaintiff Gross that had he received notice of the meeting as the Minnesota Open Meeting Law required, he would have requested that the meeting be conducted openly.  This illegal action by the Defendants is further evidence of their motivation to prohibit speech of the Plaintiffs in order to maintain their secrets.

**Events of October 1, 2013.**

36. The Crystal City Council held a closed session after their regular meeting.  The meeting was not properly noticed and there was no statement on the record prior to closing the session as required by Minnesota Statute, Chapter 13D. This meeting constitutes an unlawful closed meeting in violation of the Minnesota Open Meeting Law, see Exhibit A, and demonstrates the Defendants' intent to conspire against the Plaintiffs and violate their First Amendment rights in order to maintain secrecy regarding the Ramirez/Erkenbrack/Watt matters. Upon information and belief, the topic discussed was the situation with Officers Erkenbrack and Watt.  If the meeting had been properly noticed, Officers Erkenbrack and Watt would have had the right to request that the meeting be open so that members of the public, including the

13

Plaintiffs, could attend and participate, and the information discussed during the meeting would be available to the broader community. Officer Watt told Plaintiff Gross that had he received notice of the meeting as the Minnesota Open Meeting Law required, he would have requested that the meeting be conducted openly. This illegal action by the Defendants is further evidence of their motivation to prohibit speech of the Plaintiffs in order to maintain their secrets.

**Events of December 13, 2013.**

37. On December 13, 2013, at the conclusion of the "open forum" section of the Crystal City Council meeting, Council Member Julie Deshler read a statement vilifying CUAPB and its president, Michelle Gross.  Her statement included a number of false and defamatory claims. Ms. Gross attempted to dispute her statements by stating, "your statements are defamatory," but was prevented from doing so by then Deputy Police Chief Mike Meehan, who told her she would be ejected from the meeting for continuing to respond. Defendant Deshler's conduct shows bias toward CUAPB and shows that speech criticizing employees and elected officials of the city was prohibited while speech criticizing members of the public was permitted.

**Events of February 18, 2014, and March 4, 2014.**

38. On February 18, 2014, Plaintiffs attended the Crystal City Council meeting in order to speak during the "open forum" portion of the meeting.  Mayor Adams announced restrictions on speech including no discussion of pending or threatened litigation as well as a list of prohibited topics.  A member of the public (L. Erkenbrack) spoke about the role of the city council in relationship to the city manager.  Mayor Adams hit his gavel and told her "this is not an opportunity for you to take shots at the police chief or the city manager.  You can only

14

talk about city government." Erkenbrack stated, "I can't read the rest of my comments because you won't let me."

39. During the same meeting, Plaintiff Lincoln also attempted to speak, stating, "I'm embarrassed by your actions, with your speech on December 17." Mayor Adams gaveled to force Plaintiff Lincoln to stop speaking, claiming that her statement had something to do with pending litigation. At this point, even under their unlawful rules, there was no pending litigation.

40. Plaintiff Gross also attempted to speak during the same meeting about her concerns related to the city's treatment of whistleblower Crystal Police Officer Alan Watt. As soon as Plaintiff Gross mentioned Officer Watt's name, Mayor Adams stated, "You are not going to talk about Alan Watt. The rules, the rules, the decorum of this organization declare that you will not be talking about Alan Watt." At that point, Defendant Deputy Police Chief Mike Meehan approached the podium and bent the microphone down to stop Plaintiff Gross from continuing to speak. At that point, the city council took an abrupt recess and left the chambers.

41. Although CCTV monitors indicated that the council meeting was in recess, it was later learned that the meeting had resumed in a locked room in the basement of the city hall. During this period, police officers came into chambers and whispered to some members of the community not associated with CUAPB that they had moved to the basement to continue their meeting. When Plaintiffs attempted to attend the meeting, they were blocked by Crystal Police Officers Does 1 and 2 and told that only the Police Chief could allow them in. This meeting was later held by IPAD to be a closed meeting in violation of the Minnesota Open Meeting law, see Exhibit A.

42. On March 4, 2014, Eric Schiltz spoke during "open forum" and used the time to praise and offer his appreciation and approval of Crystal Police Chief Stephanie Revering. During his comments, Mr. Schiltz named Chief Revering by name multiple times and his entire statement was focused on discussing Chief Revering and her performance. Mayor Adams and the rest of the city council allowed Mr. Schiltz to discuss Chief Revering during open forum in violation of the City's newly adopted rules which prohibited discussion of current city employees. However, whenever Plaintiffs had previously attempted to criticize city employees only two weeks prior on February 18, 2014, Plaintiffs were interrupted and instructed that the new rules prohibit discussion of city employees. Based on these facts, Defendants regulated and censored Plaintiff's First Amendment speech by allowing discussion of positive and/or favorable comments regarding city employees and prohibiting discussion of negative and/or critical comments regarding city employees.

**Injuries and Damages.**

43. As a result of the Defendants' actions described above, Plaintiffs suffered violations of their First Amendment rights, inability to participate in and observe public meetings, stress, fear, frustration, humiliation, and embarrassment. Based on the facts set forth above, Plaintiffs have also been discouraged from participating in future Crystal city council meetings. As explained above, Defendants have often used Crystal police officers to carry out their constitutional violations and to harass and intimidate the Plaintiffs. Plaintiffs wish to engage in future participation in Crystal city council meetings but, based on the facts set forth above and intimidation by the Crystal Police Department, Plaintiffs fear that they will face further constitutional violations as well as criminal consequences if they engage in such future participation.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FIRST AMENDMENT
### VIOLATIONS/RETALIATION/DISCRIMINATION AGAINST ALL INDIVIDUAL DEFENDANTS

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. Based on the above factual allegations, the individual Defendants, through their actions, acting under the color of state law, violated Plaintiffs' constitutional right to free speech under the First Amendment to the United States Constitution.

46. As a result of these constitutional violations, Plaintiffs suffered damages as aforesaid.

### COUNT 2: 42 U.S.C. § 1983 – FIRST AMENDMENT
### VIOLATIONS/RETALIATION/DISCRIMINATION AGAINST THE CITY OF CRYSTAL

47. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

48. Prior to and as of 2012, Defendant City of Crystal developed and maintained policies and/or customs exhibiting deliberate indifference towards the constitutional rights of persons in the City of Crystal, which caused the violations of Plaintiffs' constitutional rights.

49. It was the policy and/or custom of Defendant City of Crystal to inadequately supervise and train its employees, including the individuals Defendants, thereby failing to adequately prevent and discourage further constitutional violations on the part of its employees.

50. As a result of these policies and/or customs and lack of training, employees of the City of Crystal, including the individual Defendants, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

51. These policies and/or customs and lack of training were the cause of the violations of Plaintiffs' constitutional rights alleged herein.

**COUNT 3: 42 U.S.C. § 1985 – CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS AGAINST
ALL DEFENDANTS**

52. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

53. Based on the above factual allegations, the Defendants, through their actions, acting under
the color of state law, conspired and premeditated a plan to intentionally violate Plaintiffs'
First Amendment rights.

54. As a result of this conspiracy, Plaintiff suffered damages as aforesaid.

**RELIEF REQUESTED**

**WHEREFORE, Plaintiffs requests that this Court grant the following relief:**

a.  Issue an order granting Plaintiffs judgment against Defendants, finding that Defendants
violated Plaintiffs' constitutional rights under the First Amendment to the United States
Constitution and that Defendants are liable to Plaintiffs for all damages resulting from these
violations;

b.  Issue a declaratory judgment against Defendants, finding that Defendants violated Plaintiffs'
constitutional rights under the First Amendment to the United States Constitution;

c.  Issue an injunction, ordering Defendant City of Crystal to immediately terminate its unlawful
policies, customs, and practices which infringe on citizens' First Amendment rights and to
train all present and future elected officials as well as all present and future police employees
on citizens' First Amendment rights as applicable during city council meetings.

d.  Award of compensatory damages to Plaintiffs against all Defendants, jointly and severally;

e.  Award of punitive damages to Plaintiffs against all Defendants, jointly and severally;

f.  Award of reasonable attorney's fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988;

g.  Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFFS HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: <u>May 18, 2016</u>                 By: <u>s/ Zorislav R. Leyderman</u>
                                            ZORISLAV R. LEYDERMAN
                                            Attorney License No. 0391286
                                            Attorney for Plaintiffs
                                            The Law Office of Zorislav R. Leyderman
                                            222 South 9th Street, Suite 1600
                                            Minneapolis, MN 55402
                                            Tel: (612) 876-6626
                                            Email: zrl@ZRLlaw.com